❑ Original          ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Information associated with the Facebook user ID<br>100048829314105 that is stored at premises owned,<br>maintained, controlled, or operated by Facebook Inc., a<br>company headquartered in Menlo Park, California | )<br>)<br>)   Case No. 21-873M(NJ)<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location):*

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____June 17, 2021_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Nancy Joseph_____.
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____.

Date and time issued: June 3, 2021 _____

*Judge's signature*

City and state:     Milwaukee, Wisconsin _____          Nancy Joseph, U.S. Magistrate Judge
                                                                      *Printed name and title*

**Return**

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100048829314105 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

## I.    Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)    All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for Facebook Username "TwoPiece Tee" Facebook User ID 100048829314105.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **March 1, 2021**, **to the Present**;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them,

including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from **March 1, 2021, to the Present,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

2

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from **March 1, 2021, to the Present**;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service used by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

3

## II.  Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1), involving Antwan Adams including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Antwan Adams and others related to the relevant offense of the sale and use of controlled substances;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

4

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with the Facebook user ID 100048829314105
that is stored at premises owned, maintained, controlled, or operated
by Facebook Inc., a company headquartered in Menlo Park, California

)
)
)
)
)
)

Case No. 21-873M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of controlled substances and possession with intent to distribute controlled substances |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Nesrodene Ghassoul, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone/email _____ *(specify reliable electronic means).*

Date: _____ 06/03/2021 _____

_____
*Judge's signature*

City and state: Milwaukee, Wisconsin

Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Nesrodene Ghassoul, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.     I am a Police Officer with the Milwaukee Police Department and have been since July of 2015. As of December of 2019, I've been assigned and attached as a Federally Deputized Task Force Officer (TFO) with the Federal Bureau of Investigation's Milwaukee Area Safe Streets Task Force. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

3.     As a Police Officer and a Task Force Officer, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and

conviction of individuals and the seizure of illegal drugs, weapons, United States currency and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, analysis of phones and the arrests of numerous drug traffickers. I have also been the affiant of many search warrants.

4.      Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become aware with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

5.      Based on my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to

2

electronic communication records by providing critical investigative leads and corroborative evidence.

6.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) (distribution of controlled substances and possession with intent to distribute controlled substances) have been committed by Antwan ADAMS.  There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

<u>**PROBABLE CAUSE**</u>

8.     In March of 2021, case agents interviewed a confidential source, hereinafter referred to as CS #1. CS #1 stated they were aware of an individual known as "John Cleveland," who goes by the nickname "Fred," who is currently distributing large amounts of narcotics, more specifically cocaine and heroin in the City and County of Milwaukee, Wisconsin.  CS #1 stated CS #1 knows "John Cleveland" is currently distributing up to at least nine ounces of cocaine and heroin at a time and that "John Cleveland" is primarily supplying the narcotics in the area of 3500 W. Sarnow Street in Milwaukee, Wisconsin.  CS #1 stated CS #1 has known

3

"John Cleveland" for the past six years and has known "John Cleveland" to distribute narcotics throughout that timeframe.

9.     On March 26, 2021, case agents showed a single Milwaukee Police Department booking photograph of John F. CLEVELAND (DOB: XX/XX/1976) to CS #1.  The photograph was unlabeled and contained no identifying information.  CS #1 positively identified the photograph as the person CS #1 knew as "Fred" or "John Cleveland."  Additionally, CS #1 identified 5222 N 31st Street, Milwaukee, Wisconsin, as CLEVELAND's residence.

10.     On April 13, 2021, case agents interviewed CS #1 regarding another individual known to be an associate of CLEVELAND. CS #1 stated CS #1 knows the individual as "Twan Adams." CS #1 stated that ADAMS is currently distributing large amounts of cocaine and heroin in which CS #1 believes is being supplied by CLEVELAND.  CS #1 stated CS #1 has known "Twan Adams" for at least the past six years and has known "Twan Adams" to distribute narcotics throughout that timeframe working under CLEVELAND.

11.     On April 20, 2021, case agents showed a single Milwaukee Police Department booking photograph of Antwan ADAMS (DOB: XX/XX/1986) to CS #1. The photograph was unlabeled and contained no identifying information.  CS #1 positively identified the photograph as the person CS #1 knew as "Twan Adams." Additionally, CS #1 identified 1917 N 34th Street, Milwaukee, Wisconsin, as ADAMS's residence.

4

12.     Case agents believe CS #1 is reliable and credible. First, CS #1 has provided information since October 2019. Second, CS #1's information is consistent with case agent's knowledge of violent gang subjects in Milwaukee, Wisconsin. Furthermore, substantial portions of CS #1's information have been corroborated by controlled drug purchases, money deliveries, and consensually recorded phone calls, as well as through independent police investigations that has led to the arrest and charging of various individuals with drug and gun offenses. CS #1 is a convicted felon with prior obstruction, carrying a concealed weapon, and possession and distribution of narcotics convictions.  CS #1 is receiving monetary compensation for CS #1's cooperation with law enforcement. For these reasons, case agents believe CS #1 to be reliable.

13.     On Monday, April 26, 2021, case agents, who were operating in plain-clothes capacity in undercover government vehicles, conducted surveillance at CLEVELAND's residence, 5222 N. 31st Street, Milwaukee, Wisconsin. Below are the observations made by case agents during the course of the surveillance:

        a.      6:24 p.m.: Case agents observed CLEVELAND's vehicle, which is a white in color 2012 Dodge Journey 4-door vehicle bearing Wisconsin registration plate of 670MDV (VIN# 3C4PDDBG2CT134746), parked in the rear parking slab of 5222 N 31st Street. Case agents also observed a Champagne in color 2000 GMC Savana Van bearing Wisconsin registration plate of RG1998 parked in the rear parking slab. It should be noted that on March 30, 2021, case agents

observed this vehicle while conducting surveillance and later identified this vehicle to be operated by ADAMS.

      b.     7:01 p.m.: ADAMS is observed exiting the rear entry door of the 5222 N 31st Street wearing a light blue and light green tie-dye t-shirt and blue jeans. Another subject, suspected to be ANTONIO B. JOHNSON (B/M XX/XX/1990), is observed following behind ADAMS while wearing a black with red brim basketball hat, black jacket with a red zipper, and black jeans. ADAMS is observed entering into the driver seat of the Savanna Van and the other subject suspected to be JOHNSON is observed sitting in the front passenger seat. The vehicle then drives east in the alley towards W. Teutonia Avenue out of case agents' view.

      c.     7:46 p.m.: CLEVELAND is observed exiting 5222 N 31st Street while wearing glasses, blue jacket, white t-shirt, and blue jeans. During this time case agents observed a brown grocery bag sticking out of CLEVELAND's right coat pocket. CLEVELAND is observed putting an unknown object into the white Dodge Journey and then walked back into the rear entry door of 5222 N 31st Street.

      d.     7:48 p.m.: CLEVELAND is observed exiting the rear door of 5222 N 31st Street and then entering into the driver's seat of the White Dodge Journey. CLEVELAND then began driving southbound on N. 31st Street towards W. Villard Avenue. Case agents were able to conduct a follow of CLEVELAND to the address of 4888-4890 N. 106th Street, Milwaukee, Wisconsin. Case agents momentarily lost visual of CLEVELAND until they could re-establish a surveillance location.  CLEVELAND is then observed walking back towards the White Dodge

6

Journey while holding a white plastic bag. CLEVELAND is observed placing the white plastic bag behind the driver seat of the vehicle.

   e.  CLEVELAND is then followed to the address of 4550 N. 49th Street. Case agents observed CLEVELAND exit his vehicle while holding a white plastic grocery bag containing multi-colored objects inside of the bag. Case agents further observed CLEVELAND walking near the front yard of the address located at 4548 N. 49th Street, Milwaukee, Wisconsin, which address is believed to be the residence of ADAM's family member, Jasmine A. Adams (B/F, XX/XX/89). On multiple different occasions, case agents observed a Blue, 2017 Nissan Rogue bearing Wisconsin registration plates of AEG-6999 parked in the driveway of 4548 N. 49th Street. According to the Wisconsin Department of Transportation, the above listed vehicle list to Jasmine Adams at the address of 4548 N. 49th Street, Milwaukee, Wisconsin. Due to the vantage point and inability to stop for surveillance, case agents were unable to determine whether CLEVELAND entered Jasmine Adams's residence.

  14. On April 27, 2021, law enforcement conducted follow-up investigation and determined that ADAMS has a Facebook page with a **Facebook Username** "**TwoPiece Tee**" and **Facebook User ID 100048829314105**.

  15. The profile picture of "**TwoPiece Tee**" depicts an individual smiling with gold dental jewelry, wearing Cartier glasses, black/red/white jacket and a white under shirt. Affiant also observed under the "Contact and Basic Info" tab a birth date of January 30, 1986, which is the known date of birth for ADAMS.

16.     Affiant has examined the photo albums that have been uploaded to the Facebook page with Username "**TwoPiece Tee**." Based upon, in part, the photographs contained within the reviewed photo albums, as well as the matching date of birth, Affiant believes that this Facebook page is operated and controlled by ADAMS.

17.     Upon reviewing ADAM's publicly viewable Facebook Account, agents observed a story that ADAMs posted to his Facebook Account on April 27, 2021, one day following the above-detailed surveillance. Specifically, ADAMS posted a video to his story depicting a white plastic grocery bag containing numerous "pre-rolled" blunts. ADAM's posted a caption with this photograph, which read: "Pac-Man out here." A photograph from this video is depicted below:



18.     Through my training and experience I know the glass vials depicted in the above photographs to be "Packwoods" brand of pre-rolled cigars with each cigar

8

containing approximately 2.25 grams of high-grade marijuana infused with cannabis extract. Case agents identified the packaging to be consistent with what agents observed CLEVELAND carrying near the area of ADAM's sister's residence the previous night (April 26, 2021).

19.    Based on my training and experience, I believe that ADAM's posted this video to his Facebook stories to promote the sale and distribution of his product, which in this case was high-grade marijuana. Therefore, I believe that ADAMS is using his Facebook Account "**TwoPiece Tee**" to facilitate his drug trafficking.

20.    Affiant also observed a public live video post, dated May 5, 2021, at 4:45 p.m., by ADAMS, where ADAMS was seated in a vehicle, and an unknown individual was seated in the backseat on a cell phone. ADAMS is observed using a lighter to light a cigar which appeared to consist of a green substance suspected to be marijuana; consistent with smoking a "blunt." The unknown individual in the backseat is on the phone and the following conversation is heard on the live video:

> Backseat Individual: "Hello"
>
> Caller: "Yea, Hello"
>
> Backseat Individual: "What's going on bro"
>
> Caller: "Yea, you got a perc bro"
>
> Backseat Individual: "Nah, I don't got no percs, I know where some at, we gon be going to a place called Kiss, you gon have to pull up"

9

21. During this time, ADAMS is observed retrieving a small clear gem bag consisting of a pink substance that I suspect, based upon my training and experience, to be at least one (possibly more) 10 mg Oxycodone pill and holding it in the air. The backseat individual then tells ADAMS, "they want a dub."

22. ADAMS then notifies the backseat individual to tell the caller to pull up to their location at 36th and Galena.

23. Based on affiant's training, experience, and familiarity with this investigation, affiant believes that the video posted to Facebook reflects that ADAMS arranged a narcotics transaction of a dub ($20 worth) of "Pink pills," suspected to be 10mg Oxycodone pills. Affiant further believes that because ADAMS engages in mobile drug trafficking transactions while logged into and using his Facebook Account, affiant believes that ADAMS's Facebook Account "**TwoPiece Tee**" will contain evidence related to the possession and distribution of controlled substances.

24. Based on affiant's training and experience, affiant knows that narcotic traffickers use websites and third-party applications, such as Facebook, to facilitate narcotics trafficking. I further know that those who traffic in controlled substances use Facebook to advertise their product and arrange for drug transactions, to include discussing quality of the substance, prices, and the meeting location.

25. On May 19, 2021, law enforcement sent a preservation letter to Facebook requesting the preservation of records for Facebook Account "**TwoPiece Tee**."

10

26.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

27.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

28.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

11

29.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

30.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

31.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the

12

photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

32. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

33. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

34. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (i.e., non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

13

35.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

36.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

37.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

38.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

39.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address.  These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.  For example, if a user views a Facebook profile, that user's IP log would

14

reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

40.     Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

41.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such

15

as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

42. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and

information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

43.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

44.     Based on the foregoing, I request that the Court issue the proposed search warrant.

45.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

46.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C.

17

§§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

47.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Case 2:21-mj-00873-NJ   Filed 06/03/21   Page 27 of 35   Document 1

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID 100048829314105 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

## I.  Information to be disclosed by Facebook

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)  All contact and personal identifying information, including the full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for Facebook Username "TwoPiece Tee" Facebook User ID 100048829314105.

(b)  All activity logs for the account and all other documents showing the user's posts and other Facebook activities from **March 1, 2021**, **to the Present**;

(c)  All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them,

including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)     All other records and contents of communications and messages made or received by the user from **March 1, 2021, to the Present,** including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

2

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from **March 1, 2021, to the Present**;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service used by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 10 days of issuance of this warrant.

3

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1), involving Antwan Adams including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) The relevant offense conduct, any preparatory steps taken in furtherance of the scheme, communications between Antwan Adams and others related to the relevant offense of the sale and use of controlled substances;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(e) The identity of the person(s) who communicated with the user ID about matters relating to relevant offense conduct of the sale of firearms and sale and use of controlled substances, including records that help reveal their whereabouts.

4

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Facebook, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Facebook. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b. such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____    _____
Date                             Signature

Case 2:21-mj-00873-NJ   Filed 06/03/21   Page 35 of 35   Document 1